**Thomas ROCHE, William Foley, and Joseph Brichetto, Plaintiffs,**

v.

**CITY OF CHICAGO, Defendant.**

No. 89 C 6956.

United States District Court, N.D. Illinois, E.D.

April 12, 1993.

---

Mary Stowell, Linda D. Friedman, Leng, Stowell & Friedman, Chicago, IL, for plaintiff.

Barbara Susan Smith, City of Chicago, Law Dept., Corp. Counsel, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDERS

ALESIA, District Judge.

Before the court are plaintiffs' and defendant's cross motions for summary judgment.[1] Also before the court is plaintiffs' motion to strike documents. For the reasons set forth below, plaintiffs' motion for summary judgment is granted and defendant's motion for summary judgment is denied. Furthermore, plaintiffs' motion to strike documents is denied as moot.

### I. FACTS

Plaintiffs are former Deputy Fire Commissioners employed by the City of Chicago ("City"). Plaintiffs Foley and Roche, who reached the age of sixty-three in the years 1984 and 1987 respectively, were mandatorily retired upon the passage of the revised city ordinance in March of 1988. Plaintiff Brichetto was retired in 1989 upon reaching the age of sixty-three.

From 1935 until 1983 the City required Chicago Fire Department employees in classified civil service positions to retire at the age of sixty-three. Based on the plain language of the ordinance, it applied only to employees in the classified civil service:

> The age of sixty three years shall be the maximum age for legal employment of policemen and firemen in the classified civil service of the City. Every policeman and every fireman in the classified civil service of the City who has attained the age of sixty three years shall forthwith and immediately be retired from service.

CHICAGO, ILL., MUNICIPAL CODE ch. 25, § 37 (1935). The ordinance remained in effect until March of 1983 when the United States Supreme Court held that the provisions of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., applied to municipal employers. EEOC v. Wyoming, 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983). The ADEA prohibits various forms of age discrimination in employment, including the discharge of workers on the basis of their age. 29 U.S.C. § 623(a) (1992). To comply with the mandate of EEOC v. Wyoming, the City amended its ordinance by raising the mandatory retirement from sixty-three to seventy. CHICAGO, ILL., MUNICIPAL CODE ch. 25, § 37 (1983).[2]

In 1986, Congress amended the ADEA to establish an exception in coverage for firefighters and police officers. 29 U.S.C. § 623(j) (1986).[3] The exemption provides in relevant part:

> It shall not be unlawful for an employer which is a State, a political subdivision of a

---

1. The individually named defendants, Louis Galante and Raymond Orozco, sued in their official capacities, have been voluntarily dismissed with prejudice and without costs pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii). Stipulation of Dismissal filed November 20, 1991.

2. When the Court decided EEOC v. Wyoming, the ADEA protected only workers between the ages of 40 and 70. EEOC v. Wyoming, 460 U.S. at 231, 103 S.Ct. at 1057–58 (citing 29 U.S.C. § 631(a) (1978)). Section 631(a) has been amended, however, to eliminate any maximum age. 29 U.S.C. § 631(a) (1992) (as amended 1986).

3. Congressional amendments to the ADEA in 1990 included redesignating subsection 623(i) as subsection 623(j). 29 U.S.C. § 623, historical and statutory notes (1991). The substance of this subsection was not altered, however, and for purposes of this opinion the current subsection citation will be used.

State, [or] an agency or instrumentality of a State ... to discharge any individual because of such individual's age if such action is taken—

(1) with respect to the employment of an individual as a firefighter or a law enforcement officer and the individual has attained the age of ... retirement in effect under the applicable State or local law on March 3, 1983. ...

*Id.* The inquiry focuses on the applicable state or local law on March 3, 1983, the day after the Supreme Court decided *EEOC v. Wyoming,* 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983). The exemption expires on December 31, 1993. 29 U.S.C. § 623 note (Supp.1986).[4]

The City in turn amended its retirement ordinance again to reflect the new ADEA exemption. The City's 1988 ordinance, as amended, applies to a broader class of firefighters than the 1983 ordinance:

The age of sixty three years shall be the maximum age for legal employment of sworn members of the Police Department and members of the uniformed service of the Fire Department.

CHICAGO, ILL., MUNICIPAL CODE, ch. 25, § 37 (1988) (emphasis added). The new ordinance deletes the words "classified civil service" and inserts "members of the uniformed service." Plaintiffs were mandatorily retired subject to this 1988 mandatory retirement ordinance.

## II. *DISCUSSION*

### A. *Cross Motions for Summary Judgment*

This case is ripe for summary judgment since it is basically a matter of statutory interpretation. Summary judgment may be granted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). Accordingly, each par-

ty's motion will be judged independently under the above standard.

This court must determine whether the City's 1988 mandatory retirement ordinance complies with the ADEA's exemption for firefighters. Plaintiffs contend that the ADEA exemption prohibits the City from expanding the scope of the mandatory retirement ordinance in effect on March 3, 1983. Therefore, plaintiffs contend that since they were exempt as Deputy Fire Commissioners from the 1983 mandatory retirement scheme, which applied only to classified civil service workers, they cannot be mandatorily retired pursuant to the ADEA exemption. The City contends that the ADEA exemption requires only that the retirement ordinance provide for the same mandatory retirement age as was in effect in 1983 as a floor but allows the City to expand the class of people to whom the ordinance applies. In the alternative, the City argues that the 1983 ordinance applied to plaintiffs because they took leaves of absence from their civil service positions and retained reversionary interests in those positions when they joined the exempt ranks. Therefore, defendant argues that the plaintiffs were included within the ambit of the 1983 ordinance.

■ The language of a statute or ordinance controls a court's interpretation unless it is ambiguous, inconclusive or a literal interpretation would lead to an absurd result. *See Oneida Tribe of Indians of Wisconsin v. Wisconsin,* 951 F.2d 757, 760–61 (7th Cir. 1991); *Gang v. U.S.,* 783 F.Supp. 376, 380 (N.D.Ill.1992). The court must interpret two legislative enactments to decide this case: the ADEA exemption and the City's 1983 mandatory retirement ordinance.

### 1. Construction of the ADEA exemption

■ First the court must interpret the ADEA exemption for firefighters and police officers. That exemption states that a city

---

4. The amendment "effectively institut[es] a backward-looking seven-year exemption period for police and fire department employees, during which 'studies will be undertaken to evaluate and propose criteria for physical and mental fitness

tests for police and firefighters.'" *Jirus v. Berwyn,* 712 F.Supp. 672, 676 (N.D.Ill.1989) (citing 132 Cong.Rec. 16852 (1986) (statement of Senator Heinz)).

may discharge a firefighter if "the individual has attained the age of retirement in effect under the applicable State or local law on March 3, 1983...." 29 U.S.C. § 623(j). This language is subject to two interpretations. The City argues that it means the present ordinance may expand the class of persons covered by the mandatory retirement age as long as it does not lower the retirement *age* applicable on March 3, 1983. The plaintiffs contend that the language refers to the local law in effect on March 3, 1983 in its entirety, including the class of persons to whom the 1983 ordinance applied. Therefore, according to plaintiffs' interpretation, section 4(j) of the ADEA permits the City to mandatorily retire firefighters only if they would have been retired under applicable state or local law on March 3, 1983.

Since the ADEA provision is ambiguous, the court must look beyond the plain language of the exemption. The ADEA exemption resulted from a Congressional effort to provide State and local governments with a grace period from the ADEA requirements following the *EEOC v. Wyoming* decision, while ensuring that the State and local governments did not abuse that grace period by imposing mandatory retirement ages even lower than those in effect before that decision. *See McCann v. Chicago*, 89 C 2879, 1990 WL 70415, *3–4, 1990 U.S. Dist. LEXIS 5448, *8–10 (N.D.Ill. May 3, 1990) (citing 132 Cong.Rec. 516853–4 (daily ed. Oct. 16, 1987) (statement of Senator Ford)). Thus, the defendant is correct in asserting that the ADEA exemption provides that the retirement age requirements of a plan in effect as of March 3, 1983 become the floor for allowable plans. *See McCann v. Chicago*, 1990 WL 70415, *3, 1990 U.S. Dist. LEXIS 5448, *9 (May 30, 1990). However, it would be contrary to the purpose of the ADEA exemption to allow the City to expand the class of persons to whom the age requirement applies.

Congress enacted the provision in reference to applicable local law to ensure that no lesser protection against discrimination would be provided for workers than what was in effect at the time of the *Wyoming* decision. *Id.* 1990 WL 70415 at *4, 1990 U.S.

Dist. LEXIS 5448 at *10. The *McCann* court stated that to determine whether a retirement plan satisfied the requirements under the ADEA exemption, the court must ascertain whether the plan under which the City mandatorily retired the plaintiffs provided them with the same or greater protections than the plan in effect on March 3, 1983. *Id.* Therefore, the City cannot expand the class of persons to whom the 1983 ordinance applied, and the court must determine whether the plaintiffs were included in that class.

### 2. Construction of the 1983 Ordinance

■ The 1983 ordinance, by its plain terms, applies to "firemen in the classified civil service of the city." CHICAGO, ILL, MUNICIPAL CODE ch. 25, § 37 (1935). The ordinance makes no mention of firefighters who are not in the classified civil service. Additionally, both parties stipulate that the position of Deputy Fire Commissioner is not included in either the old classified civil service or the new classified civil service. Stipulations of Fact, at 1. Thus, the 1983 ordinance, on its face, does not apply to Deputy Fire Commissioners.

Notwithstanding the above stipulation, the defendant argues that the plaintiffs, as Deputy Fire Commissioners, were subject to the provisions of the 1983 ordinance because they retained a reversionary interest in their former classified civil service positions after they were promoted. Therefore, the defendant contends that because firefighters in exempt positions have this reversionary interest, they remain within the scope of the mandatory retirement ordinance. To further support this interpretation, defendant first points to the Illinois Fire Prevention Code, ILL.REV.STAT. ch. 108½, ¶ 6–211, which calculates a firefighter's retirement annuity based on the last career or civil service position held by the retiree. Defendant also cites the City's residency ordinance which applies to classified civil service workers. CHICAGO, ILL., MUNICIPAL CODE ch. 25, § 30 (1983). Defendant asserts that this residency requirement also applied to exempt ranks and that plaintiff Foley admitted as such in his deposition.

Plaintiffs respond by arguing first that to become a Deputy Fire Commissioner one need never have been in the classified civil service, now career service, and therefore Deputy Fire Commissioners should not be subject to a provision that only applies on its face to classified civil service workers. Second, plaintiffs argue that the Illinois Fire Pension Code is irrelevant for the purpose of interpreting the City's retirement ordinance since the two are unrelated. Third, plaintiffs contend that the defendant misconstrues plaintiff Foley's deposition statement regarding whether the City's residency ordinance applies to Deputy Fire Commissioners.

Defendant fails to persuade this court that a possible link between Deputy Fire Commissioners and their former classified civil or career service positions, if they ever held such positions, places these exempt firefighters within the class covered by the mandatory retirement ordinance. First, the court agrees with plaintiffs that nowhere in the description of either the Fire Commissioner or Deputy Fire Commissioner positions does it state that a candidate must have held a position in the classified civil or career services. *See* Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment, Exhibit 5. Defendant cites no persuasive authority for its proposition that Deputy Fire Commissioners are in fact either classified civil service or career service workers who have taken temporary leave of their positions. Although under City of Chicago Personnel Rules III § 4(1) and VII § 6(a), persons returning to the career service after appointment to exempt positions were ranked according to their former career service seniority, it does not follow that members of exempt rank positions were also subject to the mandatory retirement ordinance.

Neither is this court persuaded that because the State of Illinois chooses to pay retirement benefits to firefighters based on the last classified civil service or career service position they held, the City intended to include exempt rank positions when it used the words "classified civil service" in its mandatory retirement ordinance. In fact, the Illinois statute to which the defendant refers explicitly includes firefighters who hold exempt positions in the same class as nonexempt firefighters:

> Any fireman who holds a position at the will of the Fire Commissioner or other appointing authority, whether or not such position is an "exempt" position, shall be deemed to hold a temporary position, and such employee's contributions and benefits shall be based upon the employee's permanent career service salary.

ILL.REV.STAT. ch. 108½ ¶ 6–211 (emphasis added). The fact that the legislature made the explicit reference in one ordinance but not another suggests that exempt rank positions were intentionally excluded where not explicitly included. The City's mandatory retirement ordinance makes no such specific reference; thus the plain meaning of the ordinance controls.

Finally, this court is not persuaded by defendant's argument that the language in the City's residency ordinance supports a finding that the City intended to include exempt rank employees in its retirement ordinance. Like the retirement ordinance, the City's residency ordinance applies by its terms only to classified civil service workers.[5] In fact, the paragraph of the residency ordinance cited by the defendant makes two specific references to classified civil service workers and no mention of exempt rank employees. City of Chicago's Memorandum in Support of its Motion for Summary Judgment, at 5. Regardless of whether the defendant misconstrued plaintiff Foley's statement that Deputy Fire Commissioners had to be residents of the City, Foley's statement is not dispositive of whether the residency ordinance applied, as a matter of law, to exempt rank positions.[6] More importantly,

---

**5.** That ordinance states:

All officers and employees in the classified civil service of the City shall be actual residents of the City. Any officer or employee in the classified civil service of the city who shall fail to comply with the provisions of this section shall

be discharged from the service of the city in the manner provided by law.

MUNICIPAL CODE, ch. 25, § 30 (1983).

**6.** Not only is Foley's view inconclusive, but whether it was the *practice* of the City and the Fire Department to subject all of its employees to

**238**

the court will not second guess the plain meaning of a legislative enactment unless it produces absurd results. The drafters of the mandatory retirement ordinance, as well as the residency ordinance, were free to use more specific language if they desired to include exempt rank employees. The fact that more specific language was used in the statute regarding retirement pensions for firefighters shows that the drafters knew how to do so. The court concludes that had the drafters intended to include exempt rank employees such as Deputy Fire Commissioners in the retirement ordinance, they would have done it explicitly.

Since the plain language of the 1983 ordinance is unambiguous, this court holds that the 1983 ordinance, as a matter of law, applied only to employees in the classified civil service and not to exempt rank employees such as the plaintiffs. Because the court also found that the City may not expand the scope of coverage beyond what existed in 1983, the 1988 mandatory retirement ordinance violates section 4(j) of the ADEA and the plaintiffs are entitled to relief.

**B.  *Motion to Strike Documents***

Plaintiffs have moved to strike defendant's Exhibit A, submitted with Defendant's Motion for Summary Judgment, which consists of documents purporting to be true copies of records of the Fire Department Finance Division and the Affidavit of Tanja Kolmyk submitted to establish the requisite business record foundation under Federal Rule of Evidence 803(6). These records were presented to establish the practice of the Fire Department with respect to its retirement policy. The court dismissed this line of argument out of hand since proof of the practices of the department does not establish the validity of such practices. Furthermore, the parties agree that it is the law, not the practice or deviations from practice, that determines whether the City's mandatory retirement ordinance fits within the ADEA exemption. City of Chicago's Memorandum in Opposition

to Plaintiffs' Motion for Summary Judgment, at 1–2; Plaintiffs' Motion for Summary Judgment, at 7.

### III.  *CONCLUSION*

Since the 1983 ordinance did not include within its scope Deputy Fire Commissioners and the City may not expand the scope of coverage beyond what existed in 1983, the 1988 mandatory retirement ordinance violates section 4(j) of the ADEA. There exists no genuine issue of material fact. The plaintiffs were impermissibly mandatorily retired at the age of sixty-three years. Accordingly, the plaintiffs are entitled to summary judgment, and defendant's motion for summary judgment is denied. Furthermore, plaintiffs' motion to strike is denied as moot.

---

a residency requirement is irrelevant for purposes of deciding this case. Comparing the language used in the residency ordinance with the language used in the retirement ordinance would only be helpful if this court could also determine

that, as a matter of law, the residency requirement applied to exempt as well as non-exempt rank employees. There is not sufficient evidence presented to support that conclusion.